**Robert CRUTCHFIELD, Petitioner,**

v.

**UNITED STATES PAROLE COMMISSION, Frederick Menifee, Warden, Otisville Federal Correctional Institution, Respondents.**

**No. 05 CIV.1992(RWS).**

United States District Court,
S.D. New York.

July 19, 2006.

Robert Crutchfield, Otisville, NY, Petitioner Pro se.

Honorable David N. Kelley, United States Attorney for the Southern District of New York by Jeannette A. Vargas, Assistant U.S. Attorney, New York City, for Respondents.

## OPINION

SWEET, District Judge.

Robert Crutchfield ("Crutchfield" or the "Petitioner") has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth below, the petition is denied.

### Prior Proceedings

The petition of Crutchfield was filed in the District Court for the District of Columbia on June 30, 2004, seeking judicial review of the April 6, 2004 parole decision

made by the U.S. Parole Commission (the "Commission"), setting a presumptive parole release date of February 16, 2007. Petitioner contends that the Commission erroneously calculated his parole date based upon the aggregate sentence for both his prior murder conviction and his prison breach conviction after he was returned to custody in 2000. Specifically, Crutchfield alleges that the Commission committed error in conducting an initial hearing on his aggregate sentence, rather than in holding a rescission hearing on the prison breach conviction alone. He further contends that, in arriving at its decision on his parole release date, the Commission did not properly consider his positive adjustments while living in the community on escape status and while institutionalized.

The petition subsequently was transferred to this Court on February 4, 2005.

The respondents, the Commission and Frederick Menifee, Warden at FCI Otisville (the "Respondents"), filed their opposition to the petition which was considered fully submitted on May 26, 2005.

### The Facts

On January 31, 1972, Crutchfield was convicted of one count of second degree murder, in violation of the District of Columbia Criminal Code. 22 D.C.Code § 22–2404 (1961). On March 14, 1972, he was sentenced to a term of three to twenty years' imprisonment by the Superior Court of the District of Columbia, and was placed into the custody of the District of Columbia Department of Corrections.

Crutchfield received a parole hearing from the District of Columbia Board of Parole (the "Board") on September 12, 1974.[1] At that time the Board determined

1. The Board, which previously had responsibility for making parole-release determinations for all eligible D.C.Code offenders, was abolished on August 5, 2000. On August 5,

that Crutchfield should be paroled from his sentence of imprisonment for the murder conviction on or after March 24, 1975, through a work-release program.

Crutchfield's parole never became effective, however. Instead, on February 1, 1975, Crutchfield walked away from the low-security community corrections center where he was in custody, without obtaining permission from any staff member. Authorities subsequently were unable to locate Crutchfield, and he was placed on escape status. At the time he absconded, Crutchfield had served thirty-five months of his sentence.

Crutchfield remained at-large for the next twenty-five years, living under an assumed name. During that time he married, helped to raise three children, and was employed as a carpet installer. There is no indication that Crutchfield was involved in any other criminal activity until March 15, 2000, when he was arrested for assault in North Carolina. At that time, his escape status was discovered, and he was returned to federal custody on March 16, 2000.

Crutchfield pled guilty in North Carolina state court to the charge of assault inflicting serious injury. He received a sentence of 150 days' imprisonment, to run concurrently with the time remaining on his sentence for the prior second degree murder conviction.

Crutchfield also pled guilty to a charge of prison breach in violation of District of Columbia Criminal Code § 22–2601. On July 14, 2000, Petitioner was sentenced to four to twelve months' imprisonment for this offense by the Superior Court for the District of Columbia, which sentence was to be served consecutively to his sentence on the original murder conviction.

Crutchfield was placed in the custody of the Federal Bureau of Prisons ("BOP") to serve these combined sentences. The BOP aggregated Crutchfield's sentence of three to twenty years on the murder conviction and his sentence of four to twelve months on the prison breach conviction into a single term of forty months to twenty-one years. As Crutchfield had already served thirty-five months of this combined sentence when he was returned to custody in March 2000, the BOP calculated his full-term sentence expiration date as April 16, 2018.

On April 16, 2001, Crutchfield appeared before Commission hearing examiner Jeffrey Kostbar ("Kostbar") for a determination of his presumptive parole date. Kostbar applied the guidelines found at 28 C.F.R. § 2.80, which "apply at an initial hearing" for all D.C.Code offenders. At this initial hearing, Kostbar erroneously stated that Crutchfield had never received an initial hearing with respect to the second-degree murder charge. The examiner stated that this was "significant" because an initial hearing must therefore be conducted on both the second-degree murder charge and the escape charge. Applying the initial hearing guidelines to Crutchfield's aggregate sentence for both murder and prison breach, Kostbar calculated his base guideline range as 112 to 136 months and recommended that Crutchfield receive a reconsideration hearing on his parole eligibility in three years.

On July 6, 2001, the Commission issued a Notice of Action in which it denied Crutchfield parole and scheduled a reconsideration hearing for April 2004. In its decision, the Commission calculated

1998, the Commission assumed these responsibilities as the successor agency. *See* D.C.Code § 24–131; National Capital Revitalization .and Self–Government Improvement Act of 1997, Pub.L. No. 105–33, § 11231, 111 Stat. 745.

Crutchfield's total guideline range as 112 to 136 months, and found that a decision outside of that range was not warranted.

On July 25, 2002, Crutchfield's case manager notified the Commission that Crutchfield had in fact received an initial hearing on his original second-degree murder conviction. The Commission thereafter reopened and voided its July 6, 2001 Notice of Action, and scheduled a reconsideration hearing that would apply the parole rescission guidelines pursuant to 28 C.F.R. § 2.86.

At the rescission hearing held on December 18, 2002, hearing examiner Otis Thomas ("Thomas") determined that Crutchfield's guideline range was eight to sixteen months for escape, and twelve to sixteen months for simple assault, for a total guideline range of twenty to thirty-six months. The examiner decided to recommend a parole date at the top of the guideline range. As Crutchfield had already been in custody for thirty-three months since his return from escape status in March 2000, Thomas determined that Crutchfield's presumptive parole date should be February 18, 2003.

On January 13, 2003, however, executive hearing examiner Kathleen Pinner ("Pinner") recommended that no action be taken with respect to his parole until records were obtained from North Carolina to determine the severity of Crutchfield's conduct with respect to his assault conviction. The Commission agreed, and deferred decision regarding Crutchfield's parole for ninety days.

After the records were received from North Carolina, Pinner reconsidered Crutchfield's parole eligibility on March 14, 2003. Pinner concluded that the rescission guidelines were not the appropriate standard by which to assess Petitioner's parole date, and that the Commission had been correct to apply the initial hearing guidelines found at 28 C.F.R. § 2.80. Specifically, Pinner noted that Crutchfield had not yet been paroled when he escaped from custody in 1975, and that once Crutchfield was returned to custody he received a new aggregate maximum sentence of twenty-one years and a new parole eligibility date of July 26, 2000. Because Petitioner had a new aggregate sentence and a new parole eligibility date, Pinner concluded that the Commission was required to apply the guidelines for initial hearings.

On March 21, 2003, the Commission voided the Notice of Action issued on September 20, 2002, and reinstated the July 6, 2001 Notice of Action, scheduling a reconsideration hearing for April 2004.

At the reconsideration hearing held on March 18, 2004, hearing examiner Joseph Pacholski ("Pacholski") recommended adhering to the Commission's prior decision with respect to the correct guideline range, with a slight correction to the parole eligibility date. Pacholski took note of Petitioner's positive program achievements, including the completion of a GED course, arts and business skills courses, and drug and alcohol treatment programs. He also noted that Petitioner had received the support of people in his community. Pacholski nonetheless felt that a parole release date at the top of the guideline range would be appropriate given that Crutchfield had a history of altercations that escalated into violence. Accordingly, Pacholski recommended a reconsideration hearing in March 2007.

Executive reviewer Steve Husk ("Husk"), however, noted Petitioner's "positive adjustments in the community," and recommended a presumptive parole release date of February 16, 2007, which would require Petitioner to serve a total of

118 months, a period within the lower range of the guidelines.

The Commission, by Notice of Action dated April 6, 2004, determined that the applicable total guideline range was 111 to 135 months. The Commission, endorsing Husk's recommendation, further ordered that Petitioner's presumptive parole release date was February 16, 2007.

### The Standard Of Review

■ "Federal court review of parole commission decisions is extremely limited, because the commission has been granted broad discretion to determine parole eligibility." *Bialkin v. Baer,* 719 F.2d 590, 593 (2d Cir.1983). The Second Circuit has ruled that the "appropriate standard for review of the [Parole] Commission's decisions is whether there has been an abuse of discretion. This means that a court may not substitute its own judgment for that of the commission, but may consider only whether there is a rational basis for the commission's decision." *Id.* (citations omitted); *see also Iuteri v. Nardoza,* 732 F.2d 32, 37 (2d Cir.1984) ("[A]s a reviewing court, we 'may not substitute [our] own judgment for that of the [C]ommission', and we will give '[d]eference to the [C]ommission's interpretation of its own regulations ... unless that interpretation is shown to be unreasonable.'" (quoting *Bialkin,* 719 F.2d at 593)).

### Discussion

Petitioner contends that the Commission abused its discretion in two respects: First, by holding an initial hearing on both convictions represented by his new aggregate sentence rather than a rescission hearing on his prison breach conviction alone, which would have resulted in an earlier parole date. Second, by failing to properly consider his positive adjustments while incarcerated and while living in the community. For the reasons set forth below, the Court finds that the Commission did not abuse its discretion in either respect.

### The Commission Did Not Abuse Its Discretion By Holding An Initial Hearing For Petitioner's New Aggregate Sentence

■ The Commission exercises authority over D.C.Code offenders pursuant to section 11231 of the National Capital Revitalization and Self–Government Improvement Act of 1997, Public Law 105–33, 111 Stat. 712, and D.C.Code § 24–409. The operation of the Commission with respect to D.C.Code offenders is governed by the regulations set forth at 28 C.F.R. §§ 2.70 to 2.107.

In general, the applicable guidelines for determining whether a D.C.Code offender should be paroled are set forth at 28 C.F.R. § 2.80. Under these guidelines, a parole date is determined at an initial hearing by calculating a "total guideline range" for each prisoner. The total guideline range is calculated by first adding (a) the months to parole eligibility (*i.e.,* the minimum sentence imposed by the court), (b) the "base guideline range" (any additional term of incarceration that should be served to reflect the "degree and the seriousness of the risk that the release of the prisoner would entail," 28 C.F.R. § 2.73), and (c) the guideline range for disciplinary infractions since the beginning of confinement,[2] and then subtracting any credit for superior achievement in prison programs while in confinement. 28 C.F.R. § 2.80(*l*).

---

**2.** The guideline range for disciplinary infractions is calculated according to the rescission guidelines at 28 C.F.R. § 2.36.

However, when the Commission has already considered an individual for parole and the offender commits a disciplinary infraction that leads the Commission to rescind the parole effective date, the rescission guidelines set forth at 28 C.F.R. § 2.36 are to be used to determine an appropriate additional sanction and determine the new parole date. 28 C.F.R. § 2.86(c).

Crutchfield has challenged the Commission's application of the initial hearing guidelines found at 28 C.F.R. § 2.80 in assessing his eligibility for parole, contending that the application of these guidelines was in error because he had already had an initial hearing on the sentence related to his murder conviction in 1974. *See* Petition ¶¶ 32–33. Petitioner argues that the Commission therefore should have simply conducted a rescission hearing with respect to the prison breach and assault convictions, applying the guidelines at 28 C.F.R. § 2.36. *Id.*

The Commission responds that, pursuant to 28 C.F.R. § 2.86, the rescission guidelines at section 2.36 apply only when a D.C.Code offender's parole date has been rescinded for misconduct within a correctional institution, and are inapplicable to additional criminal conduct in the general community.

This view finds some support in the regulatory language. Section 2.36, the rescission provision that governs treatment of all U.S.Code offenders, states that it applies "to the sanctioning of disciplinary infractions *or new criminal conduct* . . . ." 28 C.F.R. § 2.36(a) (emphasis added). In contrast, section 2.86, the rescission provision for D.C.Code offenders, merely states: "If a parole effective date is rescinded for disciplinary infractions, an appropriate sanction shall be determined by reference

to § 2.36." 28 C.F.R. § 2.86(c). Section 2.86 makes no provision for additional criminal conduct or convictions.

This is not a case in which Petitioner's parole date on his original murder conviction was rescinded by the Commission for institutional misconduct. Instead, Petitioner is now serving a new aggregate sentence of twenty-one years, with a new minimum term and a new parole eligibility date. "When multiple sentences are aggregated by the Bureau of Prisons . . . such sentences are treated as a single sentence for the purpose of every action taken by the Commission . . . and the prisoner has a single parole eligibility date as determined by the Bureau of Prisons." 28 C.F.R. § 2.5;[3] *see also Goode v. Markley,* 603 F.2d 973, 977 (D.C.Cir.1979) ("[I]t is well settled that it is proper for the U.S. Parole Commission to aggregate consecutive sentences for the purpose of determining parole eligibility."). Pursuant to this regulation, the Commission determined that it must treat Petitioner's aggregate sentence for his murder and prison breach convictions as a single sentence when making decisions regarding his eligibility for parole.

This interpretation of the regulations is supported by section 2.75, which notes that "the Commission may reopen any case for a special reconsideration hearing, as provided in § 2.28, upon the receipt of new and significant information concerning the prisoner." 28 C.F.R. § 2.75(e). Section 2.28, in turn, states: "If a prisoner receives an additional concurrent or consecutive federal sentence following his initial parole consideration, the Regional Commissioner shall reopen his case for a new initial hearing . . . to consider the additional sentence and reevaluate the case." 28 C.F.R. § 2.28(c).

---

**3.** Section 2.5 is made applicable to D.C.Code offenders by 28 C.F.R. § 2.89.

Although Crutchfield did have an initial hearing on his twenty-year murder sentence in 1974, in 2001 he had yet to receive an initial hearing on his aggregate twenty-one-year sentence. Thus, the Commission had yet to consider the appropriate parole release date under this new sentence. Because section 2.5 requires the Commission to treat the aggregate sentence as a single sentence, with a single parole eligibility date, the Commission concluded that it was proper to apply the initial hearing guidelines at section 2.80 to both the original murder conviction and the new prison breach conviction.

Although alternative readings of the regulatory language are possible—as evidenced by the Commission's own decision-making process—the Commission's final interpretation is a reasonable one. Accordingly, the Commission did not abuse its discretion in holding an initial hearing to determine Petitioner's presumptive parole release date with respect to his new aggregate sentence.

### *The Commission Did Not Abuse Its Discretion In Considering Petitioner's Positive Adjustments*

■ Crutchfield contends that the Commission did not properly take into account his institutional conduct, such as his vocational and educational activities, and his behavior while on escape status. *See* Petition at 12–14.

Superior program achievement while incarcerated is a factor to be considered in calculating the total guideline range at an initial hearing for a D.C.Code offender. 28 C.F.R. § 2.80(*l*). The regulations direct the Commission to "assess whether the prisoner has demonstrated ordinary or superior achievement in the area of prison programs, industries, or work assignments" and state that credit "may be granted" for superior achievement. 28 C.F.R. § 2, 80(e)(1), thereby indicating

that the decision whether to award credit is a discretionary one. *See Jones–Bey v. Sherman*, Civ. No. 04–153 Erie, 2006 WL 1479623 at *2 (W.D.Pa. March 14, 2006).

The Commission took note of Petitioner's program participation while incarcerated, but nonetheless exercised its discretion not to award superior program achievement credit. Because Petitioner has not shown that this decision was clearly unreasonable or without a rational basis, this Court cannot conclude that the Commission abused its discretion in failing to award credit for superior program achievement.

■ A prisoner's behavior in the community is not a factor in determining the total guideline range. *See* 28 C.F.R. § 2.80(*l*). However, it may be considered "in unusual circumstances" to justify a departure from the applicable guidelines. 28 C.F.R. § 2.80(n)-(1). The regulations state:

Factors that may warrant a decision below the guidelines include, but are not limited to, the following: ...

(i) Better parole risk than indicated by salient factor score. The offender is a better parole risk than indicated by the salient factor score because of

.        .        .        .        .

(B) A substantial crime-free period in the community for which credit is not already given on the Salient Factor Score[.]

28 C.F.R. § 2.80(n)(3).

The Commission determined that a presumptive parole date within the guidelines was warranted in Petitioner's case, despite his twenty-five years of productive participation in the community while on escape status. At least one hearing examiner noted that the similar violent nature of Petitioner's offenses raised concern that he

was a serious parole risk. However, the Commission did take note of Petitioner's "positive adjustment in the community" when it selected a parole release date of 118 months, which was on the low end of the guideline range of 111 to 138 months. Although the Commission unquestionably would have been justified in finding that Petitioner's history and record of support from the community indicated a good parole risk warranting a parole date below the guidelines range, this Court is unable to find that the Commission abused its discretion in determining that a parole release date within the guidelines appropriately captured the aggravating factors of Petitioner's escape and the assault he committed while on escape status, as well as his positive adjustments.

### Conclusion

For the reasons set forth above, the petition is denied.

It is so ordered.